IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:14-CV-12-BO

| | | |
|---|---|---|
| DANNY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| GREGORY POOLE EQUIPMENT COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on defendant's second motion for summary judgment. [DE 39]. The appropriate responses and replies have been filed, and the matters are ripe for ruling. For the reasons discussed below, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff worked as a diesel mechanic on ships for defendant Gregory Poole Equipment Company (GPEC) in Wanchese, North Carolina, from 2004 to 2011. [DE 41, p. 3]. In or around 2005, another male employee named David Crum began working for GPEC. *Id.* According to plaintiff, shortly thereafter, Crum began harassing plaintiff at work. *Id.* At first, Crum would persist in following plaintiff each time he went to the restroom, occasionally opening the door when plaintiff was inside. *Id.* After this persisted, plaintiff stopped using the restroom when on-site with Crum. *Id.*

Crum's behavior later escalated to making inappropriate workplace comments to plaintiff. [DE 41, p. 4]. Crum's comments included telling plaintiff he had been divorced from

his wife because she did not approve of his lifestyle, that he was disgusted by the female body, and introducing plaintiff to terms for homosexual sex acts. *Id.*

Eventually, Crum began making unnecessary physical contact with plaintiff. [DE 41, p. 4]. Crum would brush past plaintiff when they were both working on a ship, on one occasion doing so so forcefully that plaintiff could feel Crum's genitals. *Id.* The interactions between the two culminated in May 2006 when Crum attempted to kiss plaintiff. [DE 41, p. 5]. Plaintiff was able to rebuff the advance. *Id.*

Around the time Crum began making comments of a sexual nature to plaintiff, plaintiff began reporting the interactions to higher-ups at GPEC. [DE 41, p. 4]. Initially, plaintiff did so rather informally by asking his supervisors to keep him away from Crum. *Id.* After the touching incidents on the ships, plaintiff complained to his supervisor, who said he would put in a complaint of sexual harassment on plaintiff's behalf. [DE 41, p. 4–5]. There is no evidence this complaint was ever made. *Id.* After the kissing incident and the series of name calling and remarks that followed, plaintiff went to his supervisor, Rick Bayliss, to report what had occurred. [DE 41, p. 5]. Bayliss replied that plaintiff was ugly and asked why anyone would want to kiss him. *Id.* According to plaintiff, Bayliss would occasionally join in with Crum and make other offensive remarks of a sexual and homosexual nature to plaintiff. *Id.* Also after the kissing incident, plaintiff reached out to Mary Hamilton, who was a GPEC human resources representative. [DE 41, p. 6]. Hamilton denied having heard of plaintiff's complaints from any of his supervisors and encouraged plaintiff to "do what was right for the company," especially considering the way a complaint concerning "gay rights" would appear. *Id.* Hamilton's notes from this discussion include a note that Crum's girlfriend had expressed concern that Crum was going to leave her for a male employee at work. *Id.* As a result of this call, Hamilton spoke with

2

Bayliss, and they decided Crum and plaintiff would no longer work together. [DE 41, p.7]. They did not take any further actions.

After the kissing incident, Crum quit his position at GPEC, but was rehired shortly thereafter. [DE 40-2, p. 11]. Upon his return, plaintiff would try to come to work at times when he could avoid seeing Crum, but he was not always successful. [DE 41, p. 8]. When the two would be in the same place at the same time, Crum would again make offensive remarks and odd gestures toward plaintiff. *Id.* On one occasion, plaintiff spilled a chemical on his pants and, soon after changing, found Crum smelling his pants in the locker room. [DE 41, p. 8–9].

When a new supervisor, Chris Parker, took over supervision of the Wanchese plant, plaintiff asked Bayliss to inform him of plaintiff's complaints. [DE 41, p.9]. Bayliss refused. *Id.* Later, plaintiff approached an even higher supervisor, Deane Zurawski, and informed him of his repeated complaints against Crum. *Id.* Zurawski had not heard of the complaints before, and he instructed Parker not to put the two on the same work site unless necessary. *Id.* At the 2010 company Christmas party, Bayliss confronted plaintiff for going over his head to Zurawski. *Id.*

Throughout this time, defendant claims it was receiving performance complaints about plaintiff's work. [DE 40, p. 3–4]. Plaintiff consulted with an attorney on January 12, 2011, and filled out an EEOC intake questionnaire on January 24, 2011. [DE 41, p. 10–11]. On January 28, 2011, plaintiff attended a meeting laying out defendant's goals for a Performance Improvement Plan (PIP). [DE 41, p. 11]. Plaintiff refused to sign the PIP. *Id.* On February 18, 2011, plaintiff filed an EEOC Charge of Discrimination. [DE 41, p. 12]. Before a scheduled mediation, plaintiff was fired for violating a term of his PIP. *Id.* On the day plaintiff was fired, Crum attacked plaintiff, sending him to the hospital with a concussion. *Id.*

3

DISCUSSION

Plaintiff has sued defendant on claims of hostile work environment under Title VII, retaliation, and negligent supervision or retention. Defendant has filed a motion for summary judgment on all of plaintiff's claims. Only the hostile work environment claim survives summary judgment.

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

i. **Hostile Work Environment**

Hostile work environment under Title VII contains four elements. The offending conduct must be: (1) unwelcome, (2) based on gender, (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere, and (4) imputable to the employer. *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175–75 (4th Cir. 2009). At the hearing on this matter, defendant conceded the first and last factors, so the Court will only address the second and third.

4

First, the discrimination must be based on gender. "The critical issue" in this inquiry "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). The Supreme Court has held "nothing in Title VII necessarily bars a claim of discrimination 'because of . . . sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." *Id.* at 79. Though the inference that discrimination is based on sex may be easier to draw in opposite-sex cases since they are more frequent, "[t]he same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual." *Id.* at 80. Indeed, other courts have held that "regardless of the target's sexual orientation, a supervisor's unwanted sexual advance is conduct that *could* state a claim for hostile work environment sexual harassment" if "directed at a particular person 'because of' that person's gender (i.e., the gender to which the harasser is attracted), *and* it is conduct that is inherently sexual in nature." *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 472 (6th Cir. 2012) (discussing "specific homosexual advances directed to [plaintiff] by his supervisor.").

Here, the evidence indicates that there is a genuine issue of material fact as to whether the conduct at issue was directed toward plaintiff because of his gender. A number of facts from the record support this conclusion, including the attempted kiss, Crum's report that he is disgusted by the female body, Crum's girlfriend's fear that Crum would leave her for a man at work, and the repeated physical contact by Crum at work, among others. These facts create a genuine issue of material fact, so this claim is incapable of resolution at the summary judgment stage.

The Court also considers whether the third factor—whether "the workplace [wa]s permeated with 'discriminatory intimidation, ridicule, and insult[] that is sufficiently severe or

5

pervasive to alter the conditions of the victim's employment and create an abusive working environment"—and again finds that there is a genuine issue of material fact. *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). In reaching this determination, the Court is to consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Though "the line between a merely unpleasant working environment . . . and a hostile or deeply repugnant one may be difficult to discern," *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996), it must go beyond conduct that is "merely offensive" but need not go to the point of "lead[ing] to a nervous breakdown." *Harris*, 510 U.S. at 22.

Here, each of the factors mentioned in *Harris* above support a finding that there is a genuine issue of material fact. Plaintiff claims the offending conduct happened "hundreds" of times, that the contact was often physical and sexual in nature—including an attempted kiss as well as a physical attack—and that he changed his work habits as a result by requesting not to work with Crum and adapting his arrival and departure times from work in an attempt to avoid Crum. Accordingly, the Court finds that there is a genuine issue of material fact as to whether Crum's actions constitute sufficiently severe and pervasive conduct.

For the reasons above, defendant's motion for summary judgment on plaintiff's hostile work environment claim is denied.

### ii. Retaliation

To establish a prima facie case of retaliation under Title VII, "a plaintiff must prove three elements: (1) that []he engaged in a protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events."

6

*Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 410 (4th Cir. 2013) (internal quotation marks omitted). Protected activities include "making charges, testifying, assisting, or participating in enforcement proceedings" concerning allegedly discriminatory practices. *See* 42 U.S.C. § 2000e-3(a). Some Courts, including the Fourth Circuit in an unpublished opinion, have extended this protection to informal complaints of discrimination. *See Burgess v. Bowen*, 466 Fed. Appx. 272, 282 (4th Cir. 2012) ("Our cases hold that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct."); *see also Goldsmith v. City of* Atmore, 996 F.2d 1155, 1163 n.11 (11th Cir. 1993) ("informal complaints of discrimination are protected expression under Title VII."). Acts constituting adverse employment actions are broad-reaching in scope but must be "materially adverse" to a reasonable employee. *See Burlington Northern & Santa Fe Ry. V. White*, 548 U.S. 53, 57 (2006). To establish the requisite causal link, plaintiff must prove "his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

Once plaintiff establishes this prima facie case, the burden then shifts to defendant to rebut it "by legitimate nonretaliatory reasons for the adverse actions." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). If those are established, the burden of proof reverts to plaintiff "to establish by a preponderance of the evidence that the proffered reasons are pretextual." *Id.* Here, plaintiff has not proven causation, but, even if he did, he has not proven that defendant's stated reasons were pretextual, so the claim still fails.

Plaintiff claims he was terminated as a result of reporting the interactions with Crum. However, plaintiff cannot prove that those reports were the but-for cause of his termination, as he also had a troubling—and worsening—performance record. Plaintiff was first approached

7

about a PIP in January, and he filed his claim with the EEOC on February 18, 2011. In the months between the PIP and plaintiff's May termination there were several client reports of faulty work by plaintiff, as well as forbidden interaction with customers. [DE 40, p. 3–6; DE 41, p. 10, 26–27]. Plaintiff's termination came after multiple reports of flawed work and at least one unpermitted interaction with a GPEC client. *Id.* Thus, plaintiff has not proven that his reporting of discrimination was the but-for cause of his termination.

However, even if plaintiff did establish the requisite prima facie case, he has not pled sufficient facts to prove by a preponderance of the evidence that defendant's stated reasons—the work complaints and PIP violation—were pretextual, so his claim would fail at this step were it to progress that far. This is especially true because each of the stated reasons defendant has provided for plaintiff's termination derived from third parties: GPEC customers. [DE 40, p. 3–6; DE 41, p. 10, 26–27]. For these reasons, defendant's motion for summary judgment on the Title VII retaliation claim is granted.

Finally, plaintiff's attempted state law retaliation claim fails because no such cause of action exists. The Fourth Circuit has held that "there is no private right of action under North Carolina law for retaliation under 143-422.2." *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003). Accordingly, summary judgment on that claim is also granted.

### iii. Negligent Supervision/Retention

A negligent supervision or retention claim under North Carolina law requires proof of four elements: (1) a tortious act by the employee [Crum]; (2) the employee's [Crum] incompetency or unfitness; (3) the employer's [defendant] actual or constructive notice of the employee's incompetency; and (4) injury resulting from the employee's incompetency or

8

unfitness. *Medlin v. Bass*, 327 N.C. 587, 591 (1990). Here, plaintiff claims GPEC was negligent in retaining Crum after plaintiff's reports of harassment.

First, plaintiff's alleged Title VII violations do not present a genuine issue of material fact as to negligent supervision or retention because a violation of Title VII is not an acceptable predicate tort under the first factor. Under North Carolina law, the tortious act must be a common law tort. *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714 (4th Cir. 2003); *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009) ("[T]he Fourth Circuit concluded in *McLean* that North Carolina law requires a common-law tort to underly a negligent retention and supervision claim."). By definition, a violation of Title VII is not a common law tort. Accordingly, it cannot serve as the predicate tortious act for a successful negligent supervision/retention claim.

Next, if the physical altercation between Crum and plaintiff on the day of plaintiff's termination is to be the requisite tort, plaintiff's claim still fails because GPEC had no reason to foresee such an event. For a negligent supervision or retention claim to succeed, plaintiff must prove the employer's actual or constructive notice of the employee's incompetency. *See Medlin*, 327 N.C. at 591. Here, plaintiff alleges defendant was negligent in "supervision and retention of Crum [which] allowed Crum to physically assault and injure Davis." [DE 1, p. 10]. However, plaintiff has pled no facts which allow the Court to hold that defendant was ever given any reason to have "actual or constructive notice" of Crum's alleged propensity for violence. Absent this, plaintiff cannot make out the required elements for negligent supervision or retention.

Without the requisite tortious act, plaintiff's claim of negligent supervision or retention presents no genuine issue of material fact, and defendant's summary judgment motion on this claim is granted. The Court also notes that plaintiff seems to have abandoned this claim, as

9

plaintiff made no substantive argument as to its merit in response to defendant's motion for summary judgment. [DE 41].

## CONCLUSION

For the above reasons, defendant's second motion for summary judgment [DE 39] is GRANTED in part and DENIED in part. The clerk is directed to continue management of the case, which continues only on the hostile work environment claim.

SO ORDERED, this __7__ day of December, 2015.

                                          TERRENCE W. BOYLE
                                          UNITED STATES DISTRICT JUDGE